# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GLADYS PEREZ,

                    Petitioner,

    v.

STATE OF NEVADA,

                    Respondent.

Case No. 2:14-cv-02087-APG-BNW

**ORDER**

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by petitioner Gladys Perez, a Nevada prisoner who is represented by counsel.

Respondent State of Nevada mas moved to dismiss. ECF No. 34. Perez has filed a Motion to Substitute Respondents (ECF No. 40), a Motion for Discovery (ECF No. 90), a Motion for Leave to File Excess Pages (ECF No. 110), and a Motion for Evidentiary Hearing (ECF No. 111). I deny the motion to dismiss and motion for evidentiary hearing, I grant the motion to substitute respondents and motion for leave to file excess pages, and I grant in part the motion for discovery.

## I.    BACKGROUND

On January 11, 2006, Perez's boyfriend, Marc Anthony Colon, attacked her three-year-old daughter, C.F., rendering the child unresponsive. ECF Nos. 27 at 6; 82-21 at 27–28.[1] Instead of taking C.F. to the hospital, Colon and Perez drove to an apartment complex and put C.F.'s body in a dumpster. ECF No. 27 at 6. The next morning, Colon, his two daughters, Perez, and her oldest daughter left Las Vegas. *Id.* Over the next six weeks, Colon, Perez, and the girls were

---

[1] **Error! Main Document Only.**All page citations in this order are to the page number in the electronic header generated by CM/ECF rather than any internal page numbering in the original document.

on the run, traveling to Oregon, Minnesota, and Colorado. *Id.* at 7–8. In late February 2007, Perez and her oldest daughter returned to California, where she was arrested. *Id.* at 8.

### A. *State Court Procedural History*

Perez challenges the conviction and sentence imposed by the Eighth Judicial District Court for Clark County, Nevada ("state court"). She was initially charged with first degree murder by child abuse, second degree murder by child neglect, and child neglect resulting in substantial bodily harm. ECF No. 41-3. Following a 22-day trial in September and October 2008, a jury found Perez guilty of child neglect resulting in substantial bodily harm, child abuse resulting in substantial bodily harm, and first degree murder. ECF No. 78-6. The state court entered a judgment of conviction on January 9, 2009, sentencing Perez on the child abuse counts to concurrent sentences of 60–240 months and on the murder count to a consecutive sentence of life with the possibility of parole after a minimum of 20 years. ECF No. 81-3.

Perez filed a direct appeal. ECF No. 81-5. In September 2011, the Supreme Court of Nevada affirmed the convictions. ECF No. 82-21. Perez moved for rehearing and en banc reconsideration (ECF Nos. 82-22, 82-24), but the requests were denied (ECF Nos. 82-23, 82-25). A remittitur issued in March 2012. ECF No. 82-26.

On August 22, 2012, Perez filed a *pro se* state petition for writ of habeas corpus ("state petition") seeking post-conviction relief. ECF No. 83-6. The state court appointed post-conviction counsel. ECF No. 83-13. In July 2013, Perez filed a counseled supplement. ECF No. 83-22. The state court held an evidentiary hearing, and on January 14, 2014 denied the state petition. ECF Nos. 83-26, 83-27. Perez did not appeal the denial of post-conviction relief.

## B. *Federal Habeas Proceedings*

On approximately December 8, 2014, Perez mailed or handed to a prison official for the purpose of mailing, the *pro se* federal petition for writ of habeas corpus initiating this case. ECF Nos. 1, 9. This initial petition named the State of Nevada as the sole respondent. Perez filed a motion for appointment of counsel (ECF No. 3), which I denied without prejudice (ECF No. 5). I ordered Perez to submit points and authorities, together with any available evidence, to demonstrate that her claims were exhausted in the state courts. *Id.* Perez responded. ECF No. 7. I subsequently issued an order to show cause why this case should not be dismissed as time barred. ECF No. 8. After Perez responded (ECF No. 9), I *sua sponte* reconsidered my prior denial of Perez's motion for appointment of counsel and decided that appointing counsel was in the interests of justice. ECF No. 10. Thus, in December 2016, the Federal Public Defender's Office was appointed to represent Perez. ECF No. 13. After receiving multiple extensions of time, Perez filed a counseled Amended Petition (ECF No. 27) in June 2018.

In late January 2019, the State moved to dismiss the amended petition for lack of personal jurisdiction, untimeliness, and failure to exhaust claims. Three days later, Perez filed her motion to substitute respondents. On the day her response to the motion to dismiss was due, Perez filed a motion to extend the opposition deadline along with a motion for discovery. ECF No. 93. She asked that her opposition deadline be set for 60 days after the completion of discovery, if I ordered any. If I denied discovery, she asked for an additional 60 days to file her opposition. I granted her request in part, giving Perez "30 days from either a court order denying her motion for discovery or from the close of any discovery granted to file an opposition to the respondents' motion to dismiss." ECF No. 94.

After the discovery motion was fully briefed, I conducted a preliminary review of the motion and associated briefing and concluded that a decision could not be reached until the motion to dismiss was also fully briefed. ECF No. 105.  Thus, Perez was given 30 days to file a response and the State was given time to file a reply.  Perez filed an 85-page opposition, the motion for evidentiary hearing, and the motion to exceed the page limit imposed by the Local Rules.  The State submitted a reply in support of its motion to dismiss and opposition to the motion for evidentiary hearing in late September 2019.

## C. *The Parties' Positions Regarding Timeliness*

In the motion to dismiss, the State argues, among other things, that Perez's original federal petition was untimely.  The parties agree that the one-year limitation period under the Antiterrorism and Effective Death Penalty Act ("AEDPA") expired on December 1, 2014, and Perez mailed her petition on or about December 8. ECF Nos. 34 at 7–8; 108 at 46–47.  Perez argues she can overcome any procedural or timeliness bars because (i) new evidence undermines the validity of her conviction and demonstrates that she is actually innocent, and (ii) she is entitled to statutory and equitable tolling.

First, Perez claims actual innocence based on new evidence, pursuant to *Schlup v. Delo*, 513 U.S. 298 (1995).  She argues she was "a severely abused woman" and the state's theory that Perez failed to protect C.F. and "chose" her boyfriend over her daughter "simply wasn't true," and even if true did not amount to first-degree murder, second degree murder, or child neglect. ECF No. 108 at 10–11, 25.  Perez contends that an unqualified defense expert, John A. Paglini, Ph.D., testified at trial to an outdated theory of Battered Women's Syndrome, rather than the accepted understanding of intimate partner violence.  As new evidence, Perez now presents the expert opinion of Mindy B. Mechanic, Ph.D. (ECF Nos. 28-13, 28-14) and testimony of her

family members, a friend, and a prisoner who was previously incarcerated with Colon.[2]  Dr.

Mechanic opines that Perez did not have a qualified, competent psychologist evaluate her and

testify on her behalf at trial, and such testimony would have provided context for understanding

her behavior, both her actions and failures to act.  "Coercive control," if properly understood and

articulated by a qualified expert, could have explained Perez's behavior that appeared complicit

in illegal acts but was the product of coercive control by her abuser, Colon.  Additionally, Perez

claims that witnesses can provide detailed information proving Colon's coercive control over

Perez.  If the jury had heard testimony from a qualified expert like Dr. Mechanic, coupled with

the new witness testimony, Perez asserts that no reasonable juror would have convicted her.

Second, she argues that equitable tolling is appropriate because Brett Whipple, her post-

conviction counsel, was ineffective and abandoned her on appeal.  Perez claims she only saw

Whipple once during the time he represented her and rarely spoke to him on the phone. ECF

No. 109-2 at 2, ¶ 6.  Whipple failed to file a reply in support of her state petition and did not

attend the December 2013 evidentiary hearing, sending an associate instead.[3]  Perez contends

that her inability to reach Whipple and his failure to file a reply or appear at a key hearing

indicate that he was overextended, particularly because state court records list Whipple as

counsel of record in at least 200 cases during the two years he represented her.  Perez was

---

[2] Perez asserts that the testimony of these witnesses is "new evidence" because the state court refused to admit the testimony and the jury never heard it.

[3] Perez was present during the evidentiary hearing. ECF Nos. 82-25, 83-26.  The state court orally denied the petition at the end of the hearing and instructed the state to prepare an order. *Id.* The state court entered its findings of fact, conclusions of law and order on January 14, 2014. ECF Nos. 83-27, 83-28.  A notice of entry was mailed to Whipple and Perez on January 21, 2014, instructing that an appeal must be commenced within 33 days. ECF No. 83-28.  However, she claims she did not receive a copy of the decision (ECF No. 9 at 2), and requested a copy in mid-November 2014. ECF No. 36-9 (records request to state court seeking a case index, sentencing minutes, judgment of conviction, "order denying habeas corpus from hearing schedule December 5, 2013," notice of appeal, and a copy of all records on file).

purportedly told that Whipple would send her a letter explaining her options moving forward, but he never did. *Id.* at ¶ 7. Perez maintains she told Whipple on several occasions that she wanted to continue to fight by appeal and all means necessary, and she believed that he actively pursued a state habeas appeal and/or federal habeas proceedings. ECF No. 83-36 at 2. On a date unknown, she alleges Whipple told her during a phone call that he "wasn't sure" if she was serious about pursuing an appeal or federal habeas relief. *Id.* Perez therefore moved the state court to withdraw Whipple, noting that she had requested copies of records of the trial, post-conviction proceeding, and state habeas appeal from Whipple but had received nothing. *Id.* at 2–3. These actions and inaction, Perez argues, show Whipple's ineffectiveness and abandonment.

Perez further asserts that both statutory and equitable tolling are warranted because the prison prevented her from timely filing a petition. She claims the library at the Florence McClure Women's Correctional Center ("FMWCC") experienced turnover in 2013 and 2014. There was no designated librarian from sometime between May and August 2013 until December 2014 when a new librarian started. Because there was no librarian, Perez asserts that inmates could use the library only when prison staff were available to supervise. The library's hours were therefore limited and unpredictable. Inmates were required to make an appointment by submitting a kite—a difficult process that may take weeks—and they were allotted only one-hour of library time.

Perez claims she encountered great difficulty, delay, and confusion in 2014 regarding filing her federal petition *pro se* through the law library. She first requested federal habeas forms on September 14, 2014, intending to file a "Notice of Appeal with the U.S. District Court – District of Nevada." ECF Nos. 9 at 2, 91-2. The library "processed" the notice of appeal by sending it to the state court on September 25, 2014. ECF No. 36-7. At the end of October, she

claims she received additional forms to "prepare 2254 habeas packet." ECF No. 9 at 2. In mid-November, she requested a financial certificate for her habeas paperwork, and received a response dated November 20, 2014, stating "done." ECF No. 91-6. She submitted a second request for a financial certificate on November 23, and received a response dated December 1, stating that her request was submitted to inmate banking. ECF No. 91-7. Perez submitted a "time sensitive" kite for a library appointment on December 1: "Need an appointment as soon as possible – legal copies and mail out to U.S. District Court, needs to be brass-slipped no later than Friday, December 5, 2014, please." ECF No. 91-8. She received an appointment for December 8. *Id.*

During her December 8 appointment, Perez asserts that prison staff intimidated and discouraged her from filing her federal petition. ECF No. 109-2. She alleges that Assistant Warden of Programs Tanya Hill and her administrative assistant were in an office adjacent to the library while Perez and inmate law clerk Rosemary Vandecar worked on the federal petition. *Id.* at 4, ¶ 24. Hill allegedly called Perez into the office and began asking her

> a lot of questions, including some version of: "What are you doing here? Who told you about the appeals process? Why do you think the courts will do anything for you? Do you understand that when you file paperwork, you're basically suing the Department of Corrections? Do you understand that child crimes are really closely looked at?"

*Id.* The questions shocked Perez and made her cry in front of Hill and her assistant. *Id.* at ¶¶ 24–25. Perez represents that she "felt intimidated and began to worry about what would happen" to her if she filed the petition. *Id.* at ¶ 26. When she left the office and returned to the library, Perez told Vandecar what happened and Vandecar encouraged Perez to file the petition anyway. *Id.* at ¶ 27. Perez mailed the petition the same day. *Id.*

Although Hill's attempt to intimidate Perez failed, she asserts she is still entitled to equitable tolling. ECF No. 108 at 60–61. Perez contends that Hill directly controlled Perez's access to the library, and thus her ability to prepare her petition. She argues that the prison prevented her from timely filing the federal petition because the law library was rarely open, had unpredictable hours, and inadequate resources. In particular, because "the business office lost [Perez's] request for a financial certificate, making her redo the request causing a delay," she avers that equitable tolling is warranted: "Had the business office provided [Perez] with her financial certificate on November 20, 2014, as they originally said, her petition would have been timely." *Id.* at 61. Furthermore, Perez asserts the same facts authorize statutory tolling under 28 U.S.C. § 2244(d)(1)(B) (allowing for tolling or delayed accrual of AEDPA's one-year limitation period when the state creates an impediment to filing a habeas federal petition "in violation of the Constitution or laws of the United States" until such impediment is removed, if the impediment actually prevented the petitioner from filing).

In the reply, the State argues Perez has failed to show she is actually innocent or that equitable and statutory tolling are appropriate. With regard to actual innocence, the State points out that the jury heard evidence of Colon's abuse of Perez, expert testimony explaining intimate partner violence and coercive control, and the defense theory that the abuse could have contributed to Perez's involvement in C.F.'s death, yet the jury still convicted her. Although Dr. Paglini did not use the term "PTSD" in his testimony (ECF Nos. 76-2, 76-3, 76-4), the State asserts the concept and content of his testimony was virtually identical to Dr. Mechanic's assessment. Defense witnesses also testified that Perez's behaviors were noticeably different before and after Colon. ECF No. 72-1. Because Dr. Mechanic's report and the proffered witness testimony are consistent with the evidence at trial, and therefore do not amount to new evidence,

the State contends such evidence does not render the verdict unreliable or demonstrate that no reasonable juror could have found Perez guilty. Thus, she cannot meet *Schlup*'s demanding standard for actual innocence.

The State further argues that Perez is not entitled to equitable and statutory tolling. First, it contends that Whipple did not provide ineffective assistance or abandon her on appeal. Sending coverage counsel to hearings and not filing a reply, the State argues, amount to run-of-the-mill mistakes—not attorney abandonment. Perez does not allege she explicitly asked Whipple to appeal and he ignored her requests; thus, the State asserts she fails to demonstrate that Whipple actually abandoned her for an appeal. The State also argues that Perez failed to provide evidentiary support for her allegation that Whipple's caseload was excessive. Perez claims that Whipple was counsel of record in over 200 cases in state court while he represented her, but the State contends that many cases could have been stayed, inactive, lacking pending deadlines, or were non-complex and did not require many attorney hours. Further, the State asserts that Perez failed to provide legal authority showing that a defense attorney's excessive workload can meet the egregious conduct standard for attorney abandonment.

Second, the State claims Perez has not shown that the prison prevented her from timely filing her federal habeas petition. Although Perez alleges that limited access to the library and wait times for library appointments and her financial certificate impeded her efforts to draft and file a federal petition, the State asserts her allegations and NDOC records demonstrate that the prison did not prevent her access to the courts. NDOC records show that Perez submitted eight total kites for the library during 2013 and 2014, but most of those requests related to her divorce proceeding and legal name change and she did not request library appointments for a federal petition until September 2014. ECF No. 116-1 at 4–5, 12–14. The State points out that prison

staff responded to Perez's kites and made her library appointments when requested, gave her requested forms, fulfilled her request for a financial certificate,[4] and mailed her legal documents. *Id.* at 4–5, 12–21. Even assuming that the alleged incident between Hill and Perez happened, the incident occurred on December 8, 2014—one week after her December 1st AEDPA deadline—and Perez was still able to mail her petition. Thus, she cannot demonstrate that the prison made it impossible for her to access the courts.

## II. ANALYSIS

I will first address Perez's collateral motions given their impact on the State's motion to dismiss.

### A. *Motion to Substitute Respondents*

Rule 2(a) of the Rules Governing Section 2254 Cases[5] states that when a petitioner is "in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." This person is typically the warden of the prison or detention facility where a petitioner is incarcerated. *Stanley v. California Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994). Failure to name the proper respondent strips the district court of personal jurisdiction. *Smith v. Idaho*, 392 F.3d 350, 355 (9th Cir. 2004). However, a government entity may waive personal jurisdiction by failing to timely raise the issue (*id.*), and the court may allow a petitioner to "timely amend" the petition to name the correct respondent. *Stanley*, 21 F.3d at 360. Where an erroneously named respondent moves for dismissal "without identifying any conceivable

---

[4] The State notes that Perez waited until two weeks before the AEDPA deadline to request a financial certificate, and inmate banking had to return the form after her initial request because she did not sign it or fill out her inmate number. ECF No. 91-6. The completed form was resubmitted to inmate banking with the second request. ECF No. 91-7. Thus, the State asserts that Perez is solely responsible for any delay.

[5] All references to a "Habeas Rule" or the "Habeas Rules" in this order identify the Rules Governing Section 2254 Cases in the United States District Courts.

prejudice" it could suffer, and the petitioner "promptly attempt[s] to remedy the error," the court should grant the petitioner leave to amend the petition "to correct this technical deficiency." *Dubrin v. People of California*, 720 F.3d 1095, 1100 (9th Cir. 2013) (citing *Stanley*, 21 F.3d at 360; *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996)); *accord* Fed. R. Civ. P. 15(a)(2) (instructing courts to freely give leave to amend "when justice so requires").

The State requests dismissal of Perez's amended petition due to lack of personal jurisdiction and for failure to comply with my orders. In my show-cause order, I noted that the original federal petition did not name a proper respondent, and Perez "instead must name her immediate custodian as a respondent." ECF No. 8 at 4 n.5. In my order appointing counsel, I stated, "Counsel for petitioner should note that any counseled amended petition filed must name a proper respondent" since "the State of Nevada is not a proper respondent." ECF No. 10 at 2 n.1. Despite these advisements and years to correct the issue, Perez's amended petition still names the State of Nevada as the Respondent. As such, the State urges me to dismiss Perez's amended petition for lack of personal jurisdiction.

In response to this argument, Perez swiftly moved to substitute respondents to remedy any issue of personal jurisdiction. ECF No. 40. The State argues that an amendment would be futile because Perez's claims are untimely and unexhausted, and a change in the caption will not cure the "technical and procedural deficiencies to her amended petition." ECF No. 84 at 4–5. Perez contends that amending the petition to correct the caption would not be futile because she has advanced meritorious arguments to survive dismissal. Additionally, she asserts that correcting the caption will cause the State no prejudice, but dismissal "carries extraordinary punishment to Perez." ECF No. 87 at 8–9. Perez further argues that the State's counsel waived

any personal jurisdiction argument by failing to raise the issue until the motion to dismiss, which was filed three years after counsel entered a notice of appearance. ECF No. 108 at 20.

The State has failed to demonstrate "any conceivable prejudice" that would result from amending the caption to name the correct respondents. *See Dubrin*, 720 F.3d at 1100. Although Perez and her counsel overlooked my footnotes in prior orders pointing out that the original petition named the wrong respondent, their mistake does not warrant dismissal. Once the State raised the technical error, Perez timely moved to correct the deficiency three days later. In many habeas cases in this district, the court has *sua sponte* substituted an incorrectly named respondent, or the assigned deputy attorney general has either moved to substitute the named respondent or indicated a lack of objection to a substitution.[6] The State's opposition to the amendment is meritless. I will grant Perez's motion and direct her to file the proposed second amended petition.

### B. *Motion for Discovery*

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Earp v. Davis*, 881 F.3d 1135, 1142 (9th Cir. 2018). Habeas Rule 6(a) provides: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." To determine whether a petitioner has established "good cause" for discovery, the court identifies the essential elements of the substantive claim and

---

[6] *E.g.*, *Petrocelli v. Baker*, No. 3:94-cv-0459-RCJ, 2011 WL 4737061, at *4–5 (D. Nev. Oct. 5, 2011) (*sua sponte* substitution); *Middleton v. Baker*, No. 3:09-cv-0638-KJD, 2011 WL 4402670, at *2 (D. Nev. Sept. 19, 2011) (granting respondents' motion to substitute respondent); *Franklin v. Nevada*, 3:10-cv-00020-HDM, 2011 U.S. Dist. LEXIS 8628, at *5–6 (D. Nev. Jan. 21, 2011) (where petitioner incorrectly named the State of Nevada and Attorney General's Office as respondents, they moved to dismiss on personal jurisdiction grounds but had no objection to granting leave to amend).

analyzes whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate" entitlement to relief. *Bracy*, 520 U.S. at 908–09; *Roseberry v. Ryan*, 289 F. Supp. 3d 1029, 1034 (D. Ariz. 2018).

The Ninth Circuit has admonished courts not to permit a "fishing expedition" in habeas discovery. *Earp*, 881 F.3d at 1144; *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996). "Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause" for habeas discovery. *Strickler v. Greene*, 527 U.S. 263, 286 (1999). Rather, an "adequate inquiry" should only be permitted where specific allegations establish reason to believe that the petitioner "may, if the facts are fully developed, be able to demonstrate" he is entitled to relief. *Harris v. Nelson*, 394 U.S. 286, 300 (1969).

Perez seeks discovery in relation to her equitable tolling arguments.[7] ECF No. 90. Although her counsel received telephone and mail logs created and maintained by the Nevada Department of Corrections (NDOC), every number in the phone log was completely redacted and the mail log may be incomplete. Perez contends that useable versions of both logs are necessary to support her equitable tolling arguments. She also requests discovery related to Assistant Warden Hill. Perez's federal habeas counsel believes Hill has been fired from NDOC or at least demoted based on the January 2017 meeting minutes of the State's employee-management committee in which Hill challenged her discipline. *See* ECF No. 91-9. Although the details of what happened, when, and why remain unknown, counsel suspects that Hill's discipline was related to her work at the prison, which included overseeing the library, "and thus is directly relevant to [Perez's] tolling arguments." ECF No. 90 at 5–6. Perez further seeks discovery related to Whipple's representation during the state post-conviction proceeding.

---

[7] I note that Perez's motion does not seek discovery related to her actual innocence claim.

Whipple received 14 boxes from Perez's trial counsel (ECF Nos. 83-41, 83-16); however, he turned over to federal habeas counsel only seven boxes. Perez asserts that court intervention is necessary to obtain the rest of the file. Additionally, because Whipple did not appear at multiple post-conviction hearings before the state court and had an extremely high case load, Perez requests information addressing who actually worked on her case. For these reasons, Perez asserts she has demonstrated good cause for discovery related to her tolling arguments and she asks me to order the following:

*From NDOC*:
1. A complete legal mail log with dates included on the log for the entire time Gladys has been incarcerated at FMWCC.
2. A complete non-legal mail log for the entire time Gladys has been incarcerated at FMWCC
3. A completely undredacted phone log from January 1, 2014, to December 1, 2016.
4. To the extent this information cannot be provided in full, Gladys seeks permission to investigate why, including through deposition of the NDOC officials who are or were in charge of creating, maintaining, and reproducing the logs, including the law librarian and other current and former relevant staff at FMWCC.
5. To depose Cindy Ruiz, the current law librarian. Ruiz accepted the position in October, 2014, but didn't start until sometime in December, 2014. Ruiz is in the best position to describe the state of the law library when she took over in 2014, a critical time in Gladys's case.
6. Personnel records relating to Assistant Warden of Programs Tanya Hill, which may include letters of instruction, performance card documentation, reviews, complaints, grievances, promotions and demotions, and other records related to Hill's NDOC employment. In particular, Gladys seeks any records relating to the circumstances under which Hill was removed from FMWCC and/or the NDOC.
7. Any policy, memos, e-mails, or other documentation relating to the supervision and running of the law library during 2013 to 2014.

*From The Justice Law Center*:
9. (sic) Any part of Gladys's file, be it physical or electronic, that remains in Attorney Bret Whipple's custody or control, including all incoming and outgoing correspondence. Specifically, Gladys seeks the seven boxes of her file that trial counsel gave to Whipple

but which Whipple never provided to the FPD. If these boxes don't exist, Gladys requests a written explanation as to why.

10. A list of people who worked at or with Justice Law Center from September 1, 2012 to December 1, 2014 who worked on Gladys's case in any capacity. If no such list exists or cannot be complied, Gladys requests a written explanation as to why.

11. A copy of Whipple's calendar and a copy of the firm calendar from September 1, 2012 to December 1, 2014. If no calendar exists for either Whipple or the firm, Gladys requests a written explanation as to why.

12. Records detailing the number of cases handled by the Justice Law Center and Whipple in particular between 2012 and 2014, including the number of capital cases handled during that time, and the individual caseloads of each attorney, investigator, and paralegal who worked on Gladys's case.

13. Billing or time-keeping records detailing how much time each attorney, paralegal, or investigator spent working on Gladys's case.

14. Redacted billing or time-keeping records detailing how much time each attorney, paralegal, or investigator assigned to Gladys's case spent working on other cases from September 1, 2012 through December 1, 2014.

ECF No. 90 at 10–12.

The State counters that Perez has not shown good cause for discovery because the request is improper and the record is sufficient.[8] The State asserts that the mail log will not support Perez's claim for equitable tolling because she was present when the state court orally denied her petition (ECF Nos. 82-25, 83-26) and the notice of entry shows that a copy of the decision was mailed to her (ECF No. 83-28). The phone log, the State contends, will not advance Perez's claim because it would not indicate the substance of any conversations or even who she spoke with at Whipple's office. Although the State does not object to a discovery order regarding Perez's client file, the State opposes any further discovery into Whipple's staff and his caseload

---

[8] Notably, the State initially opposed discovery in part because Perez had yet to oppose the motion to dismiss. Thus, the request for discovery was purportedly premature. The motion to dismiss is now fully briefed, rendering the State's contention moot.

because Perez has not shown proof as to the inadequacy of the client file or Whipple's representation.

With regard to information about Assistant Warden Hill's alleged discipline or employment status, the State points out that Perez's alleged incident with Hill occurred December 8, 2014, after her AEDPA filing deadline expired on December 1st, and she "was obviously not discouraged" because she still mailed the federal petition the same day. Further, the 2017 meeting minutes Perez relies on do not refer to any disciplinary action taken against Hill, but rather grievances Hill filed in response to corrective action in 2015. The State therefore maintains that Perez fails to link her allegations to Hill's work in 2013 and 2014. Additionally, the State argues that Perez's claims regarding her access to the library and legal materials are belied by the record.

In reply, Perez maintains that she has shown good cause for discovery. She argues that the mail log is important to her tolling claims because there is no evidence that she actually received the state court's written decision—"things get lost in the mail all the time"—and her request is reasonable. ECF No. 103 at 6. Although the phone log will not show the content of any call, "when, how often, and how long" she spoke to Whipple or his staff matters for tolling. Perez asserts it is not enough that she knew the state court denied her state petition because Whipple had a duty to inform her of her options and perfect the appeal upon her request. The phone log will show whether Perez was able to reach Whipple and will either bolster or weaken her tolling claim. The State did not dispute that a log was produced or explain why a usable log will not be provided. Whipple's caseload and ability to manage his cases matters, Perez claims, because of his documented failures in her post-conviction case. His inability to appear in court when required purportedly demonstrates that Whipple spread himself too thin, and Perez

suffered as a result.  Perez notes that Whipple's 200 state cases in Clark County does not include cases he was handling in federal court, Nevada appellate courts, or other state district courts across the state.  Because Assistant Warden Hill was responsible for the prison library in 2014 and Perez's access to the library—or lack of access—is directly related to her tolling claims, Perez argues she has shown good cause for information regarding Hill's discipline or employment status.

I find that limited discovery is appropriate to ensure that facts alleged in Perez's tolling claims regarding post-conviction counsel are fully developed.  The state record confirms that trial counsel gave 14 banker's boxes of material to Whipple (ECF Nos. 83-41 at 3, 83-16 at 3), yet Whipple turned over only seven boxes to Perez's federal habeas counsel.  Additionally, a query of state court cases filed between September 2012 and January 2015 confirms that Whipple was counsel of record in at least 200 criminal and civil cases.[9]  Discovery may provide plausible support for a meritorious equitable tolling claim related to Whipple's representation of Perez. *See Osborne v. Dist. Attorney's Office*, 521 F.3d 1118, 1133 (9th Cir. 2008) (habeas discovery is available where it "*may* establish" a factual basis for petitioner's claim), *rev'd on other grounds*, 557 U.S. 53 (2009).

However, the current record is sufficient to show that Perez cannot succeed on her equitable and statutory tolling claims regarding the prison library and Assistant Warden Hill.  The Supreme Court has held that AEDPA's statute of limitations "is subject to equitable tolling

---

[9] I take judicial notice of the "Civil/Criminal Case Records Search Results" for Attorney Bret Whipple in the Eighth Judicial District Court of the State of Nevada.  The state court's docket records may be accessed by the public online at: https://www.clarkcountycourts.us/Anonymous/default.aspx.  The results of this query do not account for cases filed prior to September 2012 that were still open at the time Whipple was appointed to represent Perez in the post-conviction proceeding.  Further, this query does not include any appellate or federal cases or state cases outside of Clark County.  A query of the federal CM/ECF system shows that Whipple was counsel in least three dozen criminal and civil cases in the District of Nevada during the same time frame.

in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is appropriate only if the petitioner can show that: (1) she has been pursuing her rights diligently, and (2) some extraordinary circumstance stood in her way and prevented timely filing. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A petitioner "must show that some 'external force' caused his untimeliness, rather than mere 'oversight, miscalculation or negligence'." *Velasquez v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (quoting *Waldron–Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009)). Accordingly, she must demonstrate a causal relationship between the extraordinary circumstance and the lateness of her filing. *E.g.*, *Bryant v. Arizona Att. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007) (untimeliness must be "caused by an external impediment and not by [petitioner's] own lack of diligence"); *Lott v. Mueller*, 304 F.3d 918, 922–23 (9th Cir. 2002). The petitioner bears the burden of demonstrating that she is entitled to equitable tolling. *Espinoza–Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quotation omitted).

When a petitioner alleges she was prevented from accessing the court as a means to equitably toll the AEDPA limitations period, she must be able to demonstrate she was actually prevented from filing a § 2254 petition in federal court. *Ramirez v. Yates*, 571 F.3d 993, 998, 1000–01 (9th Cir. 2009). Where a prisoner is dependent on prison officials to complete a task necessary to file a federal habeas petition and the staff fails to do so promptly, this constitutes an extraordinary circumstance. *Grant v. Swarthout*, 862 F.3d 914, 926 (9th Cir. 2017). However,

the petitioner is still required to show that the extraordinary circumstances were the cause of her untimeliness. *Id.*

Perez's equitable and statutory tolling arguments regarding the prison library and Assistant Warden Hill do not demonstrate an entitlement to relief. She argues the prison prevented her from timely filing her petition because it delayed her financial certificate, Hill tried to intimidate her from filing a federal petition, and the law library was rarely open, had unpredictable hours, and had inadequate resources. None of these arguments withstands close scrutiny. Perez submitted eight kites to the library during 2013 and 2014, most of which related to her divorce proceeding and legal name change, and she did not request library appointments for the federal petition until September 2014. ECF No. 116-1 at 4–5, 12–14. Each time she requested a library appointment, she received one. Each time she requested legal forms, she received them. She does not contend otherwise. Perez provides no explanation for why she was able to request and file legal documents in 2013 and 2014, but was held back from doing so at other times. Despite attending the December 2013 evidentiary hearing and hearing the state court orally deny her state petition, Perez did not submit a kite concerning a federal petition until nine months later. The alleged incident with Hill, even if true, cannot provide a basis for equitable tolling because it occurred after Perez's AEDPA deadline expired and it did not prevent her from mailing her federal petition.

In sum, the record shows Perez was able to use the prison kite and mail systems as well as the library to submit legal filings in both state and federal courts. This demonstrates that the prison did not prevent her from presenting her claims "in *any* form, to *any* court." *See Ramirez*, 571 F.3d at 1001. Equitable tolling and delayed accrual are thus unavailable, and Perez has not shown good cause for discovery related to these arguments.

### C.  *The Remaining Motion to Dismiss, Motion for Leave to File Excess Pages, and Motion for Evidentiary Hearing*

Because I partially granted the discovery motion, I decline to address the motion to dismiss and motion for evidentiary hearing at this time.  The motions are therefore denied without prejudice.  However, this will not give the parties a "second bite at the apple" as to their positions on the issues of actual innocence, relation back, exhaustion, and procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012), which are unaffected by the limited discovery authorized in this order.  Given the extensive briefing already completed on these issues, any renewed motions must focus on the narrow equitable tolling issue for which discovery is granted. I have reviewed all of the parties' arguments and will issue a comprehensive ruling once any renewed motion is fully briefed.

I next turn to Perez's motion to exceed the page limit as to her lengthy opposition to the State's motion to dismiss.  The Local Rules inform litigants that the court disfavors motions to exceed page limits, "so permission to do so will not be routinely granted." LR 7-3(c).  Such motions must be "accompanied by a declaration stating in detail the reasons for, and number of, additional pages requested" and will be granted only "upon a showing of good cause." *Id.*  In addition, the rule states, "[t]he filing of a motion to exceed the page limit does not stay the deadline for the underlying motion or brief.  *In the absence of a court order by the deadline for the underlying motion or brief*, the motion to exceed page limits is deemed denied. *Id.* (emphasis added).

Perez filed an 85-page opposition along with her motion for leave to file excess pages on the same day a response was due.  Local Rule 7-3(c) specifically disavows this practice, requiring advanced permission for overlength briefs.  Motions to exceed page limits have

become increasingly routine in habeas cases. The Local Rules were drafted with knowledge that many—if not most—federal habeas cases involve complex legal questions. Longer page limits merely invite repetitive arguments, verbosity, string citation, unwarranted footnotes, and excessive block quotation, which waste judicial resources. Although the motion is granted, counsel is cautioned against routinely requesting leave to exceed the standard page limits and doing so in a manner that violates the Local Rules.

**IT IS THEREFORE ORDERED:**

1. The State's Motion to Dismiss **(ECF No. 34)** and Perez's Motion for Evidentiary Hearing **(ECF No. 111) are DENIED without prejudice**.

2. Perez's Motion to Substitute Respondents **(ECF No. 40)** and Motion for Leave to File Excess Pages **(ECF No. 110) are GRANTED**.

3. Perez is directed to FILE the proposed second amended petition (ECF No. 87-1) within seven days of this order.

4. Perez's Motion for Discovery **(ECF No. 90) is GRANTED IN PART AND DENIED IN PART**. Leave to conduct discovery is granted only as to the following requests:

    *From NDOC*:

    a. A complete legal mail log with dates included on the log for the entire time Perez has been incarcerated at FMWCC.

    b. A complete non-legal mail log for the entire time Perez has been incarcerated at FMWCC.

    c. A completely undredacted phone log from December 5, 2013, to December 1, 2015.

    d. To the extent this information cannot be provided in full, NDOC must provide

Perez with a written declaration explaining why. Perez may investigate why, including through interrogatories or subpoena(s) duces tecum to the NDOC officials who are or were in charge of creating, maintaining, and reproducing the logs, including the law librarian and other current and former relevant staff at FMWCC.

*From Brett Whipple, Esq. and/or the Justice Law Center*:

a. Any part of Perez's file, be it physical or electronic, that remains in Bret Whipple's custody or control, including all incoming and outgoing correspondence. Specifically, Perez seeks the seven boxes of her file that trial counsel gave to Whipple but which Whipple never provided to the FPD. If these boxes no longer exist, Whipple must provide Perez with a written declaration explaining why.

b. A list of people who worked at or with the Justice Law Center from September 4, 2012, to February 4, 2015, who worked on Perez's case in any capacity. If no such list exists or cannot be complied, Whipple must provide Perez with a written declaration explaining why.

c. Records detailing the total number of criminal cases handled by the Justice Law Center and Whipple in any court between September 4, 2012 and February 4, 2015, including the number of capital cases handled during that time, and the individual caseloads of each attorney, investigator, paralegal, or legal assistant who worked on Perez's case.

d. Any billing or time-keeping records detailing how much time each attorney, investigator, paralegal, or legal assistant spent working on Perez's case.

5. Discovery in this case must be completed by **January 2, 2020**.

6. Any renewed motion must be filed and served no later than **January 16, 2020**. The response and reply deadlines for any renewed motions will be governed by LR 7-2(b) of the Local Rules of Practice.

7. **Based on the age of this case, extensions of time are unlikely to be granted absent compelling circumstances and a strong showing of good cause why the deadline could not be met within the time allowed despite the exercise of due diligence**.

Dated:  September 30, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE