UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GLADYS PEREZ,<br><br>　　　　　　　Petitioner,<br>　　v.<br><br>STATE OF NEVADA, et al.,<br><br>　　　　　　　Respondents. | Case No. 2:14-cv-02087-APG-BNW<br><br>**ORDER**<br><br>(ECF Nos. 34, 111) |

　　　　Petitioner Gladys Perez, a Nevada state prisoner, has filed a petition for writ of habeas corpus (ECF No. 27) under 28 U.S.C. § 2254. The respondents move to dismiss the petition (ECF No. 34), and Perez moves for an evidentiary hearing (ECF No. 111).

**I.　　Background**

　　　　On January 11, 2006, Perez's boyfriend, Marc Anthony Colon, attacked her three-year-old daughter, C.F., rendering the child unresponsive. ECF Nos. 27 at 6; 82-21 at 27–28. Instead of taking C.F. to the hospital, Colon and Perez drove to an apartment complex and put C.F.'s body in a dumpster. The next morning, Colon, his two daughters, Perez, and her oldest daughter left Las Vegas. Over the next six weeks, Colon, Perez, and the girls were on the run, traveling to Oregon, Minnesota, and Colorado. In late February 2007, Perez was arrested in California. She was transported to Nevada where she stood trial and was convicted of various crimes.

　　　　Perez challenges her 2009 conviction of child neglect resulting in substantial bodily harm, child abuse resulting in substantial bodily harm, and first degree murder. ECF No. 81-2. The state district court sentenced Perez to life with the possibility of parole after a minimum of 20 years for first degree murder, and two concurrent terms of 60 months to 240 months for the abuse counts, to run consecutive to the term of life with the possibility of parole. *Id.*

　　　　The Supreme Court of Nevada affirmed her conviction on direct appeal. In August 2012, Perez filed a *pro se* state habeas petition. The court appointed Bret Whipple as her post-conviction counsel, and he filed a supplemental petition. An evidentiary hearing was held in December 2013; however, Whipple's associate, Michael Sandoval, appeared instead of Whipple. The state court denied Perez post-conviction relief on January 14, 2014, and no appeal was filed.

On approximately December 8, 2014, Perez mailed or handed to a prison official for the purpose of mailing, the *pro se* federal petition for writ of habeas corpus initiating this case. ECF Nos. 1, 9. Following appointment of counsel, Perez filed a counseled first amended petition. ECF No. 27. The State moved to dismiss the amended petition for lack of personal jurisdiction, untimeliness, and failure to exhaust claims. Perez argues, among other things, she is entitled to equitable tolling because Whipple was ineffective and abandoned her on post-conviction appeal. I granted limited discovery related to Perez's equitable tolling claim. ECF No. 119.

On November 22, 2019, Perez filed an unopposed motion to compel discovery and motion to extend discovery. ECF Nos. 122, 124. I granted the motions and instructed Whipple to respond to requests no later than January 21, 2020. ECF No. 125. After Whipple failed to respond to my order compelling discovery, Perez filed and I granted an unopposed motion for order to show cause. ECF No. 126. On February 28, 2020, I conducted a show cause hearing at which Whipple testified regarding Perez's state post-conviction case. ECF No. 139. The parties stipulated to a discovery and briefing schedule. ECF No. 142.

The court reinstated the respondents' motion to dismiss and Perez's motion for evidentiary hearing. ECF Nos. 34, 111. Perez filed a supplemental memorandum addressing only equitable tolling and relation back as related to the Ninth Circuit's *en banc* decision in *Ross v. Williams*. ECF No. 147. The respondents filed a response to Perez's supplemental memorandum. ECF No. 153.

II. **Discussion**

In the motion to dismiss, the respondents argue that Perez's original federal petition was untimely. The parties agree that the one-year limitation period under the Antiterrorism and Effective Death Penalty Act (AEDPA) expired on December 1, 2014, and Perez mailed her petition about December 8. ECF Nos. 34 at 7–8; 108 at 46–47. Perez argues she can overcome any procedural or timeliness bars because (i) new evidence undermines the validity of her conviction and demonstrates that she is actually innocent, and (ii) she is entitled to equitable tolling.

/ / / /

### a. Actual Innocence

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that actual innocence, if proved, serves as a gateway through which a petitioner may bypass the expiration of the AEDPA statute of limitations. 569 U.S. at 386. The Court also noted, however, that tenable actual innocence claims are rare. *Id.* Under *Schlup v. Delo*, 513 U.S. 298 (1995), "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." 513 U.S. at 329. Put another way, "actual innocence" is established when, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-28). The petitioner must establish factual innocence of the crime, and not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003). To demonstrate actual innocence to overcome a procedural bar under *McQuiggin* and *Schlup*, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Perez claims actual innocence based on new evidence under *Schlup v. Delo*, 513 U.S. 298 (1995). She contends she was "a severely abused woman," and the state's theory that she failed to protect C.F. and "chose" her boyfriend over her daughter "simply wasn't true," and even if true did not amount to first-degree murder, second degree murder, or child neglect. ECF No. 108 at 10–11, 25. Perez contends that an unqualified defense expert, John A. Paglini, Ph.D., testified at trial to an outdated theory of Battered Women's Syndrome, rather than the accepted understanding of intimate partner violence. As new evidence, Perez now presents the expert opinion of Mindy B. Mechanic, Ph.D. and testimony of her family members, a friend, and a prisoner who was previously incarcerated with Colon.[1] ECF Nos. 28-13, 28-14. Dr. Mechanic opines that Perez did not have a qualified, competent psychologist evaluate her and testify on her

---

[1] Perez asserts that the testimony of these witnesses is "new evidence" because the state court refused to admit the testimony and the jury never heard it.

behalf at trial, and such testimony would have provided context for understanding her behavior, both her actions and failures to act. "Coercive control," if properly understood and articulated by a qualified expert, could have explained Perez's behavior that appeared complicit in illegal acts but was the product of coercive control by her abuser, Colon. Additionally, Perez claims that witnesses can provide detailed information proving Colon's coercive control over Perez. She asserts that if the jury had heard testimony from a qualified expert like Dr. Mechanic, coupled with the new witness testimony, no reasonable juror would have convicted her.

The respondents argue that Perez has not demonstrated new evidence that would undermine the confidence in the outcome of the trial because Dr. Paglini presented testimony consistent with Dr. Mechanic's report that Perez was a victim of intimate partner violence and that she exhibited indicators that she was subject to coercive control, which likely caused Perez's behavior at the time of C.F.'s death. ECF No. 116 at 4-5. Dr. Paglini's testimony explicitly referred to "intimate partner violence," was not presented under the outdated theory of Battered Women's Syndrome, and was consistent with Dr. Mechanic's explanation of coercive control as it relates to intimate partner violence. *Id.* Further, Perez's mother, Lilia Perez, Martha Solis, and Mayra Unzueta testified that Perez's behavior was noticeably different before and after Colon. *Id.* at 3-4. As a result, the respondents argue that Perez fails to present evidence so strong that no reasonable juror would have convicted her if presented with his information.

Perez has not made a convincing showing of actual innocence. I cannot conclude that the proffered expert testimony and that of new witnesses would have changed the results of the trial. Perez argues that Dr. Paglini's testimony mirrored the outdated concept of Battered Women's Syndrome rather than intimate partner violence, and that he failed to effectively articulate the concept of coercive control. Perez asserts that Dr. Paglini assumed physical abuse preceded control and failed to testify that responses to intimate partner violence are complex, nuanced, and diverse and how Perez was specifically impacted. But Dr. Paglini testified about emotional abuse components of coercive control as to Perez specifically, including isolation from her family members, surveillance, and having resources withheld, in addition to physical violence. Ex. 312; ECF No. 76-2 at 11-12, 59-69; ECF No. 76-4 at 34. He testified as to patterns of

4

demand and threat to facilitate coercive control.² *Id.* at 66.  He further testified that Perez's ability to think, behave, and react was affected by coercive control and intimate partner violence. Ex. 312; ECF No. 76-3 at 20.  Dr. Paglini testified that people may respond to intimate partner violence differently and that such differing responses may depend on preexisting individual vulnerabilities, coping skills, and other factors.  Ex. 312; ECF No. 76-2 at 17-18; 23-24.

Perez further argues that no reasonable juror, after hearing the testimony of Perez's family members, friend, and an individual previously incarcerated with Colon, would find Perez guilty. ECF No. 108 at 34-46.  Perez's mother, Lilia, however, testified about her relationship with Perez and her granddaughters before and after Perez began dating Colon as well as her interactions with Perez, including the time period when Perez was on the run. Ex. 300; ECF No. 72-1 at 79-150.  Perez's aunt, Mayra Aylala, and friend, Mayra Unzueta, testified about their relationships with Perez, Perez's change in behavior, and their contact with Perez before and after she began dating Colon. *Id.* at 167-186.

As for the individual previously incarcerated with Colon (Ron Brady), Perez argues that Colon admitted to Brady the circumstances of C.F.'s death, including that he punched C.F., that he did not perform CPR and prevented Perez from calling 911, and that it was his decision to leave C.F in the dumpster. ECF No. 108 at 45.  The trial court refused to admit Brady's testimony as unreliable hearsay.  But even if a juror were to hear Brady's testimony and also accept the statement that Colon prevented Perez from calling 911, a juror reasonably could have relied instead on evidence presented in support of the state's theory that Perez failed to protect C.F. and "chose" Colon over her daughter.  The state presented testimony that C.F. was malnourished, that Perez had hit C.F.,³ and that Perez did not ask for help when at Walgreens on the night that C.F. was injured. Ex. 293; ECF No. 69-1 at 100, Ex. 314; ECF No. 77-1 at 51-76.

---

² Dr. Mechanic provides that "[b]y causing harm, threatening to cause harm (to the woman herself, her family, her property/pets, or self-harm), instilling fear, or otherwise making it known that negative, unwanted consequences attach for resistance or non-compliance with demands and expectations, an abuser can effectively control his abused partner." ECF No. 28-13 at 8.

³ The State did not argue that Perez administered the fatal blow to C.F. Ex. 314; ECF No. 77-1 at 68-69.

I am not persuaded that no reasonable juror would have voted to find Perez guilty. Perez's proffered testimony does not contain new, compelling information, and the proffered evidence from Dr. Mechanic is substantially consistent with expert testimony regarding intimate partner violence and coercive control presented at trial. None of the material demonstrates Perez's actual innocence. Perez fails to meet the demanding *Schlup* standard, so she has not made a viable claim that actual innocence allows her to bypass AEDPA's statute of limitations.

### b. Equitable Tolling

The one-year period of limitation of 28 U.S.C. § 2244(d)(1) is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling does not stop the limitations clock the way that statutory tolling does.

"First, for a litigant to demonstrate 'he has been pursuing his rights diligently,' *Holland*, 560 U.S. at 649 ..., and thus satisfies the first element required for equitable tolling, he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir.) (en banc), cert. denied, 141 S. Ct. 878 (2020). "[I]t is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Id.* at 599. "Second, and relatedly, it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy." *Id.*

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653.

> In determining whether reasonable diligence was exercised courts shall consider the petitioner's overall level of care and caution in light of his or her particular circumstances and be guided by decisions made in other similar cases with

>awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.

*Smith*, 953 F.3d at 599 (internal punctuation and citations omitted).

Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).  The petitioner ultimately has the burden of proof on this "extraordinary exclusion." *Id.* at 1065.  She accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of her filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).  "[I]t is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy.'" *Smith*, 953 F.3d at 600.

"Equitable tolling may be warranted in instances of unprofessional attorney behavior; however, the AEDPA deadline will not be tolled for a garden variety claim of excusable attorney neglect or mistake." *Doe v. Busby*, 661 F.3d 1001, 1011-12 (9th Cir. 2011) (citing *Spitsyn v. Moore*, 345 F.3d 796, 800-02 (9th Cir. 2003)).  The attorney's misconduct must be "a *sufficiently egregious* misdeed like malfeasance or failing to fulfill a basic duty of client representation" to warrant equitable tolling. *Id.* at 1012 (emphasis in original).  For example, trial counsel's failure to file a direct appeal is not an extraordinary circumstance warranting equitable tolling when counsel's alleged negligence has no causal connection to the petitioner's ability to file timely a federal habeas petition. *See Randle v. Crawford*, 604 F.3d 1047, 1058 (9th Cir. 2010).

Perez argues that equitable tolling is appropriate because Brett Whipple, her post-conviction counsel, was ineffective and abandoned her on appeal.  Perez claims she saw Whipple only once during the time he represented her and rarely spoke to him on the phone. ECF No. 109-2 at 2, ¶ 6.  Whipple failed to file a reply in support of her state petition and did not

attend the December 2013 evidentiary hearing, sending an associate instead.[4] Perez contends that her inability to reach Whipple and his failure to file a reply or appear at a key proceeding indicate that he was overextended, particularly because state court records list Whipple as counsel of record in at least 500 cases during the two years he represented her. *See* ECF No. 147 at 13. Whipple testified that he had "multiple attorneys retained and working for [him]," but could not provide the dates of employment for such attorneys. *Id.* at 19-20. Although Whipple's associate, Sandoval, could not recall the details of Perez's case or whether he worked on it, Whipple testified that he and Sandoval worked on Perez's case. *Id.* at 12; *see also* Ex. 49; ECF No. 137-4 at 3.

Whipple provided seven boxes of Perez's file to Perez's federal habeas counsel and, after my order granting in part Perez's motion for discovery, he turned over the remaining eight boxes of Perez's file. ECF No. 119; ECF No. 147 at 9. Whipple, however, could not locate any electronic records, notes, letters, research, or billing records produced from his office on Perez's case.[5] ECF No. 147 at 7.

Perez further argues that Whipple did not advise her of her right to appeal or perfect her appeal in state court. Perez was purportedly told Whipple would send her a letter explaining her options moving forward, but he never did. Ex. 36; ECF No. 109-2 at 2, ¶ 7. Perez maintains she told Whipple on several occasions that she wanted to continue to fight by appeal and all means necessary, and she believed that he actively pursued a state habeas appeal and/or federal habeas proceedings. Ex. 419; ECF No. 83-36 at 2. She alleges Whipple told her during a phone call

---

[4] Perez was present during the evidentiary hearing. Ex. 382; ECF No. 82-25, Ex. 383; ECF No. 83-26. The state court orally denied the petition at the end of the hearing and instructed the state to prepare an order. *Id.* The state court entered its findings of fact, conclusions of law, and order on January 14, 2014. ECF Nos. 83-27, 83-28. A notice of entry was mailed to Whipple and Perez on January 21, 2014, instructing that an appeal must be commenced within 33 days. Ex. 385; ECF No. 83-28. However, Perez claims she did not receive a copy of the decision (ECF No. 9 at 2) and requested a copy in mid-November 2014. Ex. 417; ECF No. 36-9 (records request to state court seeking a case index, sentencing minutes, judgment of conviction, "order denying habeas corpus from hearing schedule December 5, 2013," notice of appeal, and all records on file).

[5] Whipple directed his office manager to search his office's cloud computing platform that electronically stores records, and the only document related to Perez's case was "a state report or the state petition." ECF No. 143 at 6.

that he "wasn't sure" if she was serious about pursuing an appeal or federal habeas relief. *Id.* Perez therefore moved the state court to replace Whipple on December 3, 2014, noting that she had requested copies of records of the trial, post-conviction proceeding, and state habeas appeal from Whipple but had received nothing. *Id.* at 2–3; *see also* Ex. 421; ECF No. 83-38. These actions and inaction, Perez argues, show Whipple's ineffectiveness and abandonment.

The respondents contend that Whipple did not provide ineffective assistance or abandon Perez on appeal. Sending coverage counsel to hearings and not filing a reply, the respondents argue, amount to run-of-the-mill mistakes—not abandonment. ECF No. 116 at 7. The respondents assert that Perez has not clearly shown that she explicitly asked Whipple to appeal, and that he ignored her requests. Thus, the respondents assert she fails to demonstrate that Whipple actually abandoned her for an appeal. They argue that Perez cannot establish that Whipple's actions or inaction were the cause of her untimely federal filing. ECF No. 153 at 5. The respondents also argue that Perez failed to provide evidentiary support for her allegation that Whipple's caseload was excessive. ECF No. 116 at 8. In regard to Perez's claims that Whipple had an extraordinarily high caseload, the respondents contend that many cases could have been stayed, inactive, lacking pending deadlines, or were non-complex and did not require many attorney hours. *Id.* Further, the respondents assert that Perez failed to provide legal authority showing that a defense attorney's excessive workload can meet the egregious conduct standard for attorney abandonment. *Id.* at 8-9.

As for reasonable diligence, Perez asserts that she called Whipple's office twice on March 18, 2014, once on April 1, 2014, six times on April 3, 2014, and once each on April 4, April 7, and April 8, 2014. ECF No. 147 at 17-18. She called his office and spoke to someone on July 24, 2014, July 28, 2014, and August 6, 2014 before she stopped trying to reach Whipple. *Id.* Perez asserts that because outbound mail logs begin in September 2014, mail logs do not show whether she wrote to Whipple prior to her working on her case in the law library. *Id.* In 2013 to 2014, the Florence McClure Women's Correctional Center law library did not have a law librarian or designated person responsible for opening the library, and Perez could visit the library only if she submitted an appointment request in writing through a kite. Ex. 34; ECF No.

92-4.  Around September 2014, Perez asked another inmate for assistance with filing an appeal. *Id.* at 5.  On September 25, 2014, Perez completed a notice of appeal and designation of record on appeal and filed it with the state court. ECF Nos. 83-32; 83-33.

Perez requested and, on October 29, 2014, she received forms to file a motion to withdraw and a § 2254 petition. ECF No. 9 at 2.  On November 12, 2014, Perez requested a financial certificate for the purpose of filing her petition. Ex. 25; ECF No. 91-6.  Although she was informed it was completed on November 20, 2014, she did not receive the financial certificate, so on November 23, 2014 she again asked for her financial certificate.  On December 1, 2014, Perez submitted a kite for a law library appointment to mail out her petition. Ex. 27; ECF No. 91-8.  Perez was not able to get an appointment until December 8, 2014.  Perez asserts that while she was in the library on December 8, 2014, Assistant Warden Hill tried to intimidate her from filing her petition.[6]  On December 8, 2014, Perez mailed her petition for the purpose of filing.

The respondents argue that Perez does not demonstrate diligence because she was present at the hearing when the state court denied her state petition and the state court served her the order of denial on December 5, 2013. ECF No. 153 at 5-6.  Perez, however, did not request law library appointments for the purposes of filing her federal habeas petition until August 2014. Ex. 426; ECF No. 116-1.  The respondents argue that Perez was never denied access to the law library and never had to wait more than two weeks to obtain access to the library. ECF No. 153 at 5-6.

Perez fails to show that she was reasonably diligent in pursuing her rights. *See Lott v. Mueller*, 304 F.3d 918, 922-23 (9th Cir. 2002) (stating that the district court must examine whether, notwithstanding the extraordinary circumstances, the petitioner could have filed a timely petition).  While abandonment by an attorney may, in some cases, constitute an "extraordinary circumstance," the attorney's actions alone cannot satisfy the separate and distinct

---

[6] In my September 30, 2019 order, I determined that the alleged incident with Hill and alleged prison interference preventing Perez from timely filing her federal petition does not provide a basis for equitable or statutory tolling because it occurred after Perez's AEDPA deadline expired and it did not prevent her from mailing her federal petition. *See* ECF No. 119.

requirement that a defendant demonstrate diligence. *See, e.g., United States v. Buckles*, 647 F.3d 883, 890 (9th Cir. 2011). In *Holland*, the Supreme Court concluded that the defendant had been diligent based on the fact that he

> not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins – the central impediment to the pursuit of his legal remedy – removed from his case. And further the *very day* that Holland discovered his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court.

560 U.S. at 653 (emphasis in original). Perez makes no such showing of diligence.

Although Perez argues that she experienced difficulty getting access to the law library due to library staff turnover, the record shows that from about February 2013 to August 2014, Perez made requests for and was granted law library appointments to work on various legal matters including a divorce proceeding and name change. Ex. 426; ECF No. 116-1. Perez does not allege or provide documentation to show that she submitted to prison officials any grievance, inmate request forms, or complaints regarding lack of access to the law library. On September 25, 2014, Perez submitted a notice of appeal and designation of record on appeal to the state court for filing. Ex. 415; ECF Nos. 83-32; 83-33. Perez began working on her federal petition with the help of a fellow inmate after filing the notice of appeal to the state court. *See* Ex. 34; ECF No. 92-4 at 5. At the time, at least two months remained to file a timely federal habeas petition. Further, although Perez made several attempts to contact Whipple by telephone, she did not attempt to contact the Supreme Court of Nevada regarding the status of the purported state postconviction appeal.

Even assuming Perez's allegations were true and the alleged attorney abandonment here was an extraordinary circumstance, Perez has not demonstrated that she diligently attempted to remedy the extraordinary circumstance or diligently pursued her rights when free from the extraordinary circumstance. *See Smith v. Davis*, 953 F.3d at 599. Perez has not demonstrated that her untimeliness in filing the federal petition was caused by an external impediment, rather than by her own lack of diligence. The record demonstrates that Whipple's alleged abandonment

did not prevent Perez from filing a federal petition by the December 1, 2014 AEDPA deadline.

Perez has not met the high threshold of demonstrating that extraordinary circumstances prevented her from litigating a federal habeas petition. The alleged conduct does not amount to an extraordinary circumstance that warrants equitable tolling because Perez has not demonstrated the necessary causal link between Whipple's alleged inaction and the untimeliness of her federal petition. *See Buckles*, 647 F.3d at 890-91 (quoting *Randle*, 604 F.3d at 1058) (counsel's failure to file a timely notice of appeal from a state conviction "had little to no bearing on [petitioner's] ability to file a timely federal habeas petition. Counsel's failure … simply meant that [petitioner] had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action – it did not prevent him from filing the petition."); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) ("We conclude that the miscalculation of the limitations period by Frye's counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling."); *Johnson v. Baca*, 2021 WL 920185, at *8 (D. Nev. Mar. 10, 2021) ("[E]even if [counsel] had failed to file an appeal, equitable tolling would still not be warranted because her inaction had no effect on the timeliness of [petitioner's] federal petition.").

In summary, Whipple's alleged actions and inactions were not an extraordinary circumstance that prevented timely filing of Perez's federal petition. Further, Perez has not demonstrated reasonable diligence. Perez has failed to meet the burden of establishing that she is entitled to equitable tolling.

### III. Motion for Evidentiary Hearing

Perez requests an evidentiary hearing with respect to her arguments on actual innocence and tolling. Evidentiary hearings are authorized in federal habeas corpus actions by Rule 8 of the Rules Governing § 2254 Cases. An evidentiary hearing is not warranted when "the record refutes [petitioner's] factual allegations or otherwise precludes habeas relief." *Schiro v. Landrigan*, 550 U.S. 465, 474 (2007). Perez does not show that factual development by an evidentiary hearing is warranted. I resolve the questions of Perez's entitlement to tolling and arguments of actual innocence on the briefing of the parties and on the extensive record before

the court, without need for further factual development.  Perez's motion for an evidentiary hearing is denied.

### IV.     Certificate of Appealability

A district court is required to issue or deny a certificate of appealability when it enters a final order adverse to a habeas petitioner, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Fed. § 2254 R. 11(a); 9th Cir. R. 22-1(a).

Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  Where a district court denies relief on procedural grounds without reaching the underlying constitutional claim, the court applies a two-step inquiry to decide whether a certificate of appealability is appropriate. *Payton v. Davis*, 906 F.3d 812, 820 (9th Cir. 2018) / *Payton*, 906 F.3d at 820.  A petitioner must show both that jurists of reason would find it debatable (1) "whether the petition states a valid claim of the denial of a constitutional right," and (2) "whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (citation and quotation omitted); *Payton*, 906 F.3d at 820 ("Both components must be met before [the Ninth Circuit] may entertain the appeal.") (citing *Slack*, 529 U.S. at 484–85).  To meet the threshold inquiry, a petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *See Allen v. Ornoski*, 435 F.3d 946, 950–951 (9th Cir. 2006).

Applying this standard, I find that a certificate of appealability is unwarranted in this case.  I therefore deny Perez a certificate of appealability.

### V.      Conclusion

Perez filed her federal petition after the expiration of the AEDPA limitations period  She has failed to show that she is entitled to bypass the limitation period due to actual innocence or equitable tolling.  Accordingly, I grant the respondents' motion to dismiss.  I will not address the relation-back arguments because the initial petition is untimely and equitable tolling is not warranted.  I therefore dismiss this action as untimely without addressing the respondents'

alternative defenses of exhaustion.

**I THEREFORE ORDER:**

1. The respondents' motion to dismiss **(ECF No. 34) is GRANTED in part**. Petitioner's first amended petition for writ of habeas corpus (ECF No. 27) is dismissed with prejudice as untimely. The Clerk shall enter judgment accordingly and close this case.

**2.** Petitioner Gladys Perez's Motion for Evidentiary Hearing **(ECF No. 111) is DENIED.**

3. A certificate of appealability is DENIED as reasonable jurists would not find the court's decision debatable or wrong.

Dated: February 2, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE